# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND ANTHONY LEWIS,<br><br>        Petitioner,<br><br>    v.<br><br>RON DAVIS, Warden of San Quentin State Prison,<br><br>        Respondent. | Case No.  1:03-cv-06775-LJO-SAB<br><br>DEATH PENALTY CASE<br><br>ORDER DISMISSING-IN-PART AND DENYING-IN-PART PETITIONER'S RULE 59(e) MOTION<br><br>(Doc. No. 157)<br><br>(CASE TO REMAIN CLOSED) |

Before the Court is Petitioner's motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure (hereinafter the "Rule 59(e) Motion") to alter or amend the August 20, 2018 judgment (hereinafter the "Judgment") entered upon the memorandum and order filed that same day (hereinafter the "Order").  Petitioner, in his Rule 59(e) Motion seeks further proceedings on claims 12, 17, and 18, and expansion of the partial certificate of appealability to include claim 12.

Respondent filed an opposition to the Rule 59(e) Motion.  Petitioner replied to the opposition.

Based on the facts of this case and controlling law, the Rule 59(e) Motion is amenable to decision without a hearing.

# I. BACKGROUND

The Court set forth the factual and procedural history of this case in its Order and will not repeat it here in full, but will provide a summary where relevant to the Rule 59(e) Motion.

The underlying amended petition raised 33 claims including subclaims asserting erroneous juror selection, jury misconduct, witness incompetency, trial court and instructional error, insufficient evidence, prosecutorial misconduct, denial of counsel, ineffective assistance of trial and post-conviction counsel, and violations of international law. Petitioner based his claims on allegations that he did not commit first degree murder and robbery in the killing of Sandra Simms, and California's death penalty statute is unconstitutional on its face and as applied.

The Court entered Judgment upon the Order denying Petitioner's motions for evidentiary hearing, record expansion, and discovery; denying the first amended petition for writ of habeas corpus with claims 1-19 and 21-22 denied on the merits and claim 20 denied without prejudice as premature; and issuing a certificate of appealability for claims 14, 15, 16, 17 and 18.[1] (Doc. Nos. 155 & 156.)

# II. LEGAL STANDARD

Rule 59(e) of the Federal Rules of Civil Procedure allows a district court to alter, amend, or vacate a prior judgment. Under Rule 59(e), a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law. *See 389 Orange Street Partners v. Arnold,* 179 F.3d 656, 665 (9th Cir. 1999); *Allstate Ins. Co. v. Herron,* 634 F.3d 1101, 1111 (9th Cir. 2011).

The purpose of Rule 59(e) is "to allow the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (quoting *York v. Tate*, 858 F.2d 322, 326 (6th Cir. 1988)). To this end:

> Rule 59(e) does not list specific grounds for a motion to amend or alter; hence, the district court enjoys considerable discretion in granting or denying the motion.

---

[1] All references to the first amended petition are to Doc. No. 58-1.

[Citation] In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law. [Citation] Other, highly unusual circumstances, also may warrant reconsideration. [Citation]

At the same time, however, a motion for reconsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation. [Citation] Therefore, a party raising arguments or presenting evidence for the first time when they could reasonably have been raised earlier in the litigation ... raises the concern that it has abused Rule 59(e). [Citation] Ultimately, a party seeking reconsideration must show more than a disagreement with the court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden. [Citation]

As is abundantly clear, amending a judgment after its entry remains an extraordinary remedy. [Citation] The Ninth Circuit thus has repeatedly cautioned that such an amendment should be used sparingly. [Citation] Amendment of judgment is sparingly used to serve the dual interests of finality and conservation of judicial resources. [Citation] It stands to reason then that plaintiff, as the moving party here, has a high hurdle. [Citation] Moreover, denial of a motion for reconsideration under Rule 59(e) will not be reversed absent a showing of abuse of discretion. [Citation]

. . .

Manifest error is, effectively, clear error, [Citation] such that a court should have a clear conviction of error. [Citation] Thus, mere doubts or disagreement about the wisdom of a prior decision of this or a lower court will not suffice. [Citation] To be clearly erroneous, a decision must strike a court as more than just maybe or probably wrong; it must be dead wrong. [Citation]

Within the Ninth Circuit, courts also have looked to Black's Law Dictionary, stating that a manifest error of fact or law must be one that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record.

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 282 F.R.D. 216, 220-21, 231 (D. Ariz. 2012); accord *Allstate Ins. Co.*, 634 F.3d at 1111; *see also* Local Rule 230(j).

### III. DISCUSSION

#### A. Jurisdiction

The Federal Rules of Civil Procedure apply in habeas corpus proceedings only "to the extent that they are not inconsistent with any statutory provisions or [the Rules Governing Section 2254 Cases]." Rule 12, Rules Governing § 2254 Cases; *see also* Fed. R. Civ. P 81(a)(4).

The Supreme Court has not addressed whether or how Rule 59(e) is to be applied in federal habeas corpus cases subject to the Anti-terrorism and Effective Death Penalty Act (hereinafter "AEDPA"). *See Row v. Beauclair*, No. 1:98-CV-00240-BLW, 2015 WL 1481416 at *5 (D. Idaho Mar. 31, 2015).

The Ninth Circuit Court of Appeals has instructed that a district court presented with a motion for reconsideration in a habeas case must first determine whether the motion should be construed as a second or successive habeas petition. *Rishor v. Ferguson*, 822 F.3d 482, 492 (9th Cir. 2016). In this regard:

> [A] motion for reconsideration filed within twenty-eight days of judgment that raises a new claim, including one based on newly discovered evidence or an intervening change in substantive law, is subject to AEDPA's second-or-successive petition bar. However, a timely motion for reconsideration that asks the district court to reconsider a previously adjudicated claim on grounds already raised should not be construed as a second or successive habeas petition subject to AEDPA's additional restrictions. *See* 28 U.S.C. § 2244(b).

*Id.* at 493-94.

Here, the Rule 59(e) Motion shall be construed as a second and successive petition to the extent it claims the prosecution at Petitioner's capital trial presented false evidence in the form of allegedly repudiated expert opinion that the fire which killed A.Z. Rogers (hereinafter "Rogers") was arson. *(See* Doc. No. 157 at 17-20); *Rishor*, 822 F.3d at 492. Petitioner supports the false evidence claim with the 2013 repudiating opinions of purported fire science expert, John Lentini, included in Petitioner's reply to the opposition to his motion for evidentiary hearing. (*See* Doc. No. 137-1, Ex. 27.)

The false evidence claim and opinions of Mr. Lentini are not included in the state record. *See Lewis on Habeas Corpus*, Case No. S083842, *In re Raymond Anthony Lewis*, Case Nos. S131322, S154015. Mr. Lentini's opinions were not considered by the California Supreme Court in its adjudication of his state habeas petitions. *Id.*

The false evidence claim and opinions of Mr. Lentini are not included in the amended petition in this proceeding. (*See* Doc. No. 58-1 at 120-26.) Petitioner did not move to stay this

proceeding for adjudication of the false evidence claim.[2]  Petitioner has not demonstrated the false evidence claim is "part and parcel of his one full opportunity to seek habeas relief" in this proceeding.  *Rishor*, 822 F.3d at 495.

The Court did not consider Mr. Lentini's opinions in its assessment of whether 28 U.S.C. § 2254(d) barred habeas relief.  (*See* Doc. No. 155 at 318-27 citing *Cullen v. Pinholster*, 563 U.S. 170, 181, 185, 203 n.20 (2011) (claims adjudicated on the merits can only rely upon the record that was before the state court); *see also Rishor* 822 F.3d at 492, n.8 (in the context of a habeas proceeding, a Rule 59(e) motion raising newly discovered evidence is construed as a second or successive petition).

Accordingly, for the reasons stated, the Court lacks jurisdiction over the Rule 59(e) Motion to the extent it is construed as a second or successive habeas petition.  The Court is unpersuaded by Petitioner's conclusory argument on reconsideration that it ignored his unspecified merits briefing that showed independent satisfaction of § 2254(d) and entitlement to *de novo* review.  (*See* Doc. No. 162 at 11.)

## B.    Reconsideration of Claims

### 1.    Claim 12

Petitioner asks the Court to reconsider its denial of his claim 12 which alleges jury foreman Paul W. introduced into deliberations extraneous religious authority of a Christian afterlife that was used by the jury to justify imposition of the death penalty.  (Doc. No. 157 at 5-12; *see also* Doc. No. 58-1 at 74-76.)[3]  He also asks the Court to reconsider its refusal to include claim 12 in the partial certificate of appealability.

#### a.    *Clearly Established Law*

---

[2] Petitioner states that the false evidence claim and Mr. Lentini's opinions are the subject of a pending state habeas petition filed pursuant to Penal Code section 1473 (which provides authority for a writ of habeas corpus on grounds of false evidence including repudiated expert opinion).  *See In re Lewis*, Cal. Sup. Ct. No. S225564.

[3] Unless otherwise noted: (i) reference to state law is to California law, (ii) "CT" refers to the clerk's transcript on appeal, (iii) "RT" refers to the reporter's transcript on appeal; (iv) "1SHCP" refers to the initial state habeas corpus petition, "2SHCP" refers to the second state habeas corpus petition, "3SHCP" refers to the third state habeas corpus petition, and (v) other transcripts are referenced by date.  References to page numbering are to the page numbering in the original document except that Bates numbering is used where available and ECF system numbering is used for electronically filed documents referred to by an ECF "Doc. No.".

A jury's consideration of extraneous evidence violates a criminal defendant's right to trial by jury. *Turner v. Louisiana,* 379 U.S. 466, 471-73 (1965).

Due process requires that a defendant be tried by "a jury capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982); *see also United States v. Plache*, 913 F.2d 1375, 1377-78 (9th Cir. 1990) ("It is well-settled that a single partial juror deprives a defendant of his Sixth Amendment right to a trial by an impartial jury.").

The introduction of prejudicial extraneous influences into the jury room constitutes misconduct which may result in reversal of a conviction. *Parker v. Gladden*, 385 U.S. 363, 364-65 (1966). A claim that jurors were exposed to extrajudicial evidence is considered based on an objective standard - whether the evidence would have affected a reasonable juror's consideration of the evidence. *Fields v. Brown*, 503 F.3d 755, 781 n.22 (9th Cir. 2007).

On collateral review, juror misconduct claims "are generally subject to a 'harmless error' analysis, namely, whether the error had 'substantial and injurious' effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993), *overruled on other grounds by Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012); *Fields*, 503 F.3d at 781 & n.19 (noting that *Brecht* provides the standard of review for harmless error in cases involving unconstitutional juror misconduct); *Jeffries v. Blodgett*, 5 F.3d 1180, 1190 (9th Cir. 1993) (a habeas petitioner must show that the alleged error "had substantial and injurious effect or influence in determining the jury's verdict.").

### *b.* *Analysis*

Petitioner does not set forth any basis that warrants reconsideration. He does not demonstrate newly discovered evidence or intervening change in controlling law. Nor has he demonstrated that the court committed clear error of law or fact, or manifest injustice. Rather, Petitioner reiterates the same arguments and re-litigates the same issues the court already considered in denying the claim. This is improper. "Reconsideration should not be used merely to ask the court to rethink what it has already thought." *Clarke v. Upton*, No. 1:07-CV-0888 AWI-SMS, 2012 WL 6691914, at *1 (E.D. Cal. Dec. 21, 2012); *see also Arteaga v. Asset*

*Acceptance, LLC*, 733 F. Supp. 2d 1218, 1236 (E.D. Cal. 2011) ("[R]ecapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.").

Petitioner's arguments in support of reconsideration of claim 12 are discussed separately below.

### i. Paul W.'s Statement of his Belief in a Christian Afterlife

#### (1) Extra-Judicial Religious Authority

Petitioner argues the Court erred in finding it reasonable that Paul W.'s jury room statement that "[Petitioner] had been exposed to Jesus Christ … [and] would have 'everlasting life' regardless of what happened to him" was a personal belief in the commonly known Christian theme of a spiritual afterlife and not extra-judicial religious authority derived from an outside source. (Doc. No. 157 at 5-6; *see also* Doc. No. 155 at 31, 34-35, citing *Lewis*, 26 Cal. 4th at 389 ("Jurors bring to their deliberations knowledge and beliefs about general matters of law and fact that find their source in everyday life and experience."; *id.* at 32 citing *Lewis*, 26 Cal. 4th at 390-91) ("The jurors did not consult material extraneous to the record, like the Bible.").) He argues the Court errantly based this finding on its harmless error analysis, discussed *post*. (Doc. No. 157 at 5-12.)

Petitioner's re-argument and re-litigation of matters relating to extra-judicial authority that were considered by the Court in denying the claim are not a basis for reconsideration. He argues the Court erred by referring to *Henry v. Ryan*, 720 F.3d 1073, 1086 (9th Cir. 2013) and *Fields*, 503 F.3d at 780 in both its analysis of the question of extra-judicial authority and its analysis of the question of harmless error. Particularly, he suggesting the latter analysis improperly informed the former analysis. (Doc. No. 157 at 6-8.) But *Henry* and *Fields* each involved jury consideration of commonly known but extrinsic authority found by those courts to be harmless error; issues that are in part common to the Court's analysis of both the noted questions. (*See* Doc. No. 155 at 27-35, 38-39.) Petitioner has not demonstrated a basis for reconsideration in these regards.

### (2) Harmless Error

Petitioner argues the Court erred in finding it reasonable that Paul W.'s jury room statement was harmless. He distinguishes *Henry* and *Fields* on grounds the jurors in this case discriminated against him based upon his religion by using Paul W.'s statement regarding everlasting spiritual life as evidence in aggravation when it should only have been mitigating. (Doc. No. 157 at 5-12.)

However, Petitioner's re-argument and re-litigation of matters considered and rejected by the Court does not demonstrate a basis to reconsider the Court's finding that the presumption jurors followed their instructions reasonably was not rebutted by his proffered inferential evidence of improper influence. (*See* Doc. No. 155 at 34 citing CALJIC 1.03, CT 605; *id.* at 38-39 citing *Crittenden v. Ayers*, 620 F.3d 962, 990-92 (9th Cir. 2010), *amended on denial of reh'g enbanc*, 624 F.3d 943, 970 (9th Cir. 2010) (juror's reference to and brief discussion of Biblical passage, after which deliberations continued, even if error, was not prejudicial)); *cf. Godoy v. Spearman*, 861 F.3d 956, 959 (9th Cir. 2017) (juror affidavit supported presumption of prejudice arising from outside influence of judge-friend of juror that affected deliberations). The same applies to the Court's finding it was reasonable that jurors consider and share their religious and deeply held beliefs during penalty deliberations. (*See* Doc. No. 155 at 26-40); cf. *Sassounian v. Roe*, 230 F.3d 1097, 1108 (9th Cir. 2000) (citing *Dickson v. Sullivan*, 849 F.2d 403, 406-07 (9th Cir. 1988)) (jury's consideration of extrinsic fact of a phone call taking credit for the killing was prejudicial misconduct where multiple jurors recalled discussing details of the phone call, and the trial evidence was weak).

Petitioner's inferential argument that Paul W.'s statement influenced the jury to aggravate based upon Petitioner's religious characteristics (*see* Doc. No. 162 at 5-6) reasonably remains unsupported in the record. As the Court observed, the jury heard evidence of Petitioner's jailhouse interest in religion (*see* Doc. No. 155 at 27, 34-35, 39), as well as argument relating to religious norms. "[T]he jury was aware through the prior testimony of Petitioner's sister, Sandra McCullar, that Petitioner had become somewhat religious while in jail awaiting trial," (Doc. No.

155 at 34) and that "[c]ounsel Pedowitz argued religious sensibilities at the penalty closing by reminding jurors that thou shall not kill and that they would have to reconcile a death penalty verdict with their own God." (*Id.*) The foregoing belies Petitioner's assertion on reconsideration that the Court failed to consider the jury's discussion of Petitioner's religious beliefs as versus the religious beliefs of Paul W. (*See* Doc. No. 162 at 5.)

Petitioner has not shown the Court erred legally or factually in finding that the California Supreme Court reasonably could have found a lower likelihood of prejudice "to the extent the religious theme of life after death is a commonly known one." (*See* Doc. No. 155 at 34 citing *Henry*, 720 F.3d at 1086; *id.* at 35 citing *Fields*, 503 F.3d at 780.)

Furthermore, Petitioner's re-spun religious discrimination argument that California's death penalty statute is unconstitutional by making imposition of the death penalty dependent upon a particular characteristic of the offender unrelated to "acceptable goals of punishment" (Doc. No. 162 at 4 citing *Coker v. Georgia*, 433 U.S. 584, 592 (1977)), simply repackages matters considered and rejected by the Court, discussed above, and fails as a basis for reconsideration for the same reasons. *Coker* is inapposite as it involved the constitutionality of a death eligibility special circumstance, not the case here. (*Coker*, 433 U.S. at 592.) Also, the Court previously found that the California Supreme Court reasonably denied Petitioner's claims relating to the constitutionality of California's death penalty statute. (*See* Doc. No. 155 at 265-314.) Petitioner does not seek reconsideration of the Court's denial of those claims.

### ii. "No Impeachment" Rule

Petitioner argues that the Court erred by concluding Paul W.'s jury room statement that Petitioner "had been exposed to Jesus Christ … [and] would have 'everlasting life' regardless of what happened to him" reasonably could be found inadmissible under the rule precluding impeachment of a verdict with evidence of juror deliberative and mental processes (hereinafter the "No Impeachment Rule"). (Doc. No. 157 at 9-12.) He argues the No Impeachment Rule does not apply here because the jury discriminated on the basis of his exercise of the Christian

faith.[4]  (*Id.* citing *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 869 (2017) (no-impeachment rule gives way where juror makes clear statement that he or she relied on racial stereotypes or animus to convict a criminal defendant), and *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U. S. 520, 546-47 (1993) (ordinance dealing with ritual slaughter of animals lacked compelling government interest justifying targeting of religious activity); *see also* Doc. No. 162 at 3-6).

However, the argument does not state any basis for reconsideration.  Petitioner has not demonstrated he was discriminated against based upon his religion, for the reasons stated.   It follows that his argument for an exception to the No Impeachment Rule on that basis similarly fails.

To the extent Petitioner might assert an argument based upon the right to freely exercise his religion, the authority he cites is wholly untethered from matters of jury misconduct and unavailing as a basis for reconsideration given the noted facts and circumstances of this case.

It remains that evidence of Paul W.'s jury room statement and the impact thereof during deliberations is subject to the No Impeachment Rule, for the reasons stated.  Petitioner's reliance upon pre-Rule 606 authority applying the No Impeachment Rule in cases where the jury considered extrinsic facts is misplaced; the cases are inapposite.  (*See* Doc. No. 157 at 9 citing *Mattox v. United States*, 146 U.S. 140, 149 (1892) (superseded by Rule as stated in *Pena-Rodriguez,* 137 S. Ct. at 863-64) (juror may testify as to fact showing extraneous influence, but not the effect of such upon deliberations); and *Remmer v. United States*, 347 U.S. 227, 229 (1954) (any private communication, contact, or tampering with a juror is presumptively prejudicial); *see also* Doc. No. 58-1 at 74-76; Doc. No. 162 at 5-6.)

### iii.    Certificate of Appealability

Petitioner argues the Court erred by refusing to include claim 12 in the partial certificate of appealability.  (Doc. No. 157 at 12.)   He requests the Court expand the certificate of appealability to include claim 12.  (*Id.*)

As the Court previously observed, a certificate of appealability is available only "if

---

[4] The Court observes that claim 12 does not allege violation of Petitioner's First Amendment right to freely exercise his religion.

jurists of reason could disagree with the district court's resolution of [Petitioner's] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." (Doc. No. 155 at 328 citing *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).) A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338. Where constitutional claims are denied on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack*, 529 U.S. at 484.

Here, reasonable jurists would not find the Court's assessment of claim 12 and its determination that it is reasonable claim 12 lacks merit to be debatable or wrong or deserving of encouragement to proceed further, for the reasons stated. (*See also* doc. No. 155 at 328-29.) Petitioner's re-argument and re-litigation of matters considered by the Court in denying the claim provide no basis for reconsideration and issuance of a certificate of appealability expanded to include claim 12. *Cf. Tharpe v. Sellers*, 138 S. Ct. 545, 546 (2018) (on Rule 60(b) motion, certificate of appealability denial remanded where juror affidavit presented strong argument that petitioner's race affected the death verdict).

### c. *Conclusions*

Petitioner's re-argument and re-litigation of his claim that jury foreman Paul W.'s reference during sentencing deliberations to the Christian belief of an afterlife was extrinsic evidence of Christian religious authority used by the jury as justification for imposing the death sentence is not a proper basis for Rule 59(e) relief. *See Clarke*, 2012 WL 6691914 at *1; *Arteaga*, 733 F. Supp. 2d at 1236. Likewise, he fails to demonstrate a basis for reconsideration and issuance of a certificate of appealability expanded to include claim 12.

### 2. Claim 17

Petitioner asks the Court to reconsider its denial of his claim 17 which alleges counsel

was ineffective by failing to establish his juvenile confession to the burning death of Rogers was invalid. (Doc. No. 157 at 12-17; *see also* Doc. No. 58-1 at 116-19.) He also asks the Court to reconsideration its denial of his claim 17 motions for discovery and an evidentiary hearing. (Doc. No. 157 at 17.)

### a. *Clearly Established Law*

The Sixth Amendment right to effective assistance of counsel, applicable to the states through the Due Process Clause of the Fourteenth Amendment, applies through the sentencing phase of a trial. *See Murray v. Schriro*, 745 F.3d 984, 1010-11 (9th Cir. 2014); U.S. Const. amend. VI; U.S. Const. amend. XIV, § 1; *Gideon v. Wainwright*, 372 U.S. 335, 343-45 (1963); *Silva v. Woodford*, 279 F.3d 825, 836 (9th Cir. 2002).

The Supreme Court explained the legal standard for assessing a claim of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 685-87 (1984). *Strickland* propounded a two-prong test for analysis of claims of ineffective assistance of counsel. First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The petitioner must show that "counsel's representation fell below an objective standard of reasonableness," and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing *Strickland*, 466 U.S. at 688); *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995).

Judicial scrutiny of counsel's performance is highly deferential, and the habeas court must guard against the temptation "to second-guess counsel's assistance after conviction or adverse sentence." *Strickland*, 466 U.S. at 689. A court indulges a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687); *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994). This presumption of reasonableness means that not only do we "give the

attorneys the benefit of the doubt," we must also "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." *Pinholster*, 563 U.S. at 196.

Second, the petitioner must demonstrate prejudice. He must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result . . . would have been different." *Strickland*, 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 693). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687). Under this standard, we ask "whether it is 'reasonably likely' the result would have been different." *Richter*, 562 U.S. at 111 (quoting *Strickland*, 466 U.S. at 696).

Under AEDPA, the Court does not apply *Strickland de novo*. Rather, the Court must determine whether the state court's application of *Strickland* was unreasonable. *Richter,* 562 U.S. at 99-100. Establishing that a state court's application of *Strickland* was unreasonable under 28 U.S.C. § 2254(d) is very difficult. *Richter*, 562 U.S. at 100. Since the standards created by *Strickland* and § 2254(d) are both "highly deferential," when the two are applied in tandem, review is "doubly" so. *Richter*, 562 U.S. at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123-24 (2009); accord *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (quoting *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003).

The basic requirements of *Strickland* apply with equal force in the penalty phase. Petitioner must show that counsel's actions fell below an objective standard of reasonableness, and that the alleged errors resulted in prejudice. *Strickland*, 466 U.S. at 687-88.

### *b.* *Analysis*

### i. **Deficient Performance**

Petitioner argues the Court erred by concluding the California Supreme Court reasonably found counsel not deficient in defending aggravating evidence of his 1975 juvenile confession in the burning death of Rogers. (Doc. No. 157 at 12-17; *see also* Doc. No. 155 at 163-89, 198.) He

argues the interrogation techniques used against him when he was thirteen years old had a propensity to induce a false confession. He argues the state court failed to take requisite "special care" in assessing the voluntariness of his confession given his age, intelligence, and background. (Doc. No. 157 at 12-14 citing *Gallegos v. Colorado*, 370 U.S. 49, 53-54 (1962) (confession by fourteen-year-old, following interrogation over five days without access to parent or attorney violated due process where totality of circumstances demonstrated coercion); *Fare v. Michael C.*, 442 U.S. 707, 725 (1979) (whether custodial statements by juvenile are admissible is determined on the totality of circumstances surrounding the interrogation including juvenile's age, experience, education, background and intelligence); *Miller v. Fenton*, 474 U.S. 104, 116 (1985) (due process requires that the interrogation techniques applied to "this suspect" are compatible with presumed innocence and suspect's will not being "overborne.").

However, the Court concluded that the California Supreme Court acted reasonably in finding counsel was not deficient by foregoing objection to the confession on asserted *Miranda* [*v. Arizona*, 384 U.S. 436 (1966)] grounds including as to waiver, subsequent invocation, and re-advisement. (*See* Doc. No. 155 at 177-185.) Petitioner's re-argument and re-litigation of matters considered by the Court in denying the claim do not demonstrate a basis for reconsideration.

The Court found it reasonable that Petitioner acted knowingly and intelligently in waiving *Miranda* rights and that law enforcement was not required to re-admonish him given the facts and circumstances of this case. (*Id.*, citing *Lewis*, 26 Cal. 4th at 386-87; Evid. Code, § 402(b); *Miller-El*, 537 U.S. at 347 ("a state court need not make detailed findings addressing all the evidence before it.").

The Court found it reasonable Petitioner's confession was not coerced, observing that:

> Petitioner has not established that his life and mental state history circa 1975 shows a susceptibility of coercion … Nor does he identify facts of physical or psychological inducement. The trial court found no extraordinary interview procedures that might smack of coercion. [Citation] The fact that detective Lean may have been absent from portions of investigator Martin's interview with Petitioner, and Lean's failure to testify to conditions of Petitioner's detention during the separate interviews of Green and Randolph, [are] not necessarily a basis to discount Lean's testimony at the 402-hearing. [Citation] Lean's testimony at the 402-hearing regarding *Miranda* matters appears to be consistent and unimpeached. [Citation]

(Doc. No. 155 at 188.)

Petitioner's recast argument regarding "his young age at the time he confessed; the coercive nature of juvenile interrogation generally and his interrogation specifically; the invalidity of his express *Miranda* waiver; his invocation of rights under *Miranda* and denial thereof by law enforcement; and law enforcement's re-initiation of interrogation without a fresh *Miranda* advisement" does not militate for reconsideration. (Doc. No. 162 at 7-8); *see also* Doc. No. 157 at 12-17.)

The Court considered the totality of facts and circumstances surrounding Petitioner's 1975 confession including: the lack of a tape recorded or written confession, his youth, his mental state, his prior experience with law enforcement, the circumstances under which he was detained and not free to go, and the methods used by the police to adduce his confession. (*See* Doc. No. 155 at 163-89.) The Court concluded that:

> [T]he California Supreme Court reasonably found that Petitioner's confession was not coerced. The interview sessions appear to have been relatively short and free flowing. Petitioner, aware the information he provided was not consistent with that in the possession of law enforcement, nonetheless continued to offer-up information. Detective Martin testified that just prior to the confession, he made a moral appeal that Petitioner tell the truth, [Citation], and told Petitioner that Green's version of events surrounding Rogers's death was inconsistent with Petitioner's version [Citation]. Petitioner then gave yet another version of Rogers's death [Citation], that Rogers['s] death was caused accidentally while Petitioner and Green engaged in horseplay, throwing gas at each other [Citation].
>
> When Martin pointed to further inconsistencies between this newest version of the Rogers's death and crime scene evidence and witness statements, [Citation], Petitioner offered up his confession. He told Martin that he had thrown gas into the backseat area and on Rogers and threw in a match because Rogers had earlier slapped him when he had taken Rogers's watch. [Citation] Petitioner then repeated his confession to detective Christensen. [Citation]
>
> Petitioner has not established that his life and mental state history circa 1975 shows a susceptibility of coercion, for the reasons discuss[ed] above. Nor does he identify facts of physical or psychological inducement. The trial court found no extraordinary interview procedures that might smack of coercion. [Citation] The fact that detective Lean may have been absent from portions of investigator Martin's interview with Petitioner, and Lean's failure to testify to conditions of Petitioner's detention during the separate interviews of Green and Randolph, [are] not necessarily a basis to discount Lean's testimony at the 402-hearing. [Citation] Lean's testimony at the 402-hearing regarding *Miranda* matters appears to be consistent and unimpeached. [Citation]

> Accordingly, the California Supreme Court reasonably rejected Petitioner's suggestion the police coerced or induced his confession merely by raising inconsistencies in his statements to them.
>
> Petitioner's argument that his confession must have been coerced because his initial explanation for Rogers's death was true appears to be self-serving and merely conclusory. Petitioner's testimony at the 402-hearing in which he alternatively denied giving different explanations for Rogers's death or could not recall doing so, is not evidence otherwise. His testimony is subject to discount given his status as a felon and his repeated changing of his explanation of Rogers's death to accommodate the inconsistencies noted by police during the interview process. [Citation]
>
> Additional reason to discount any claimed coercion is apparent from Petitioner's noted calm demeanor during the interview, and his previous involvement with law enforcement for minor conduct prior to and unrelated to Rogers's death, as noted by Dr. Callahan. [Citation]; *see also Lewis*, 26 Cal. 4th at 384.

(Doc. No. 155 at 187-89); *see also Lewis*, 26 Cal. 4th at 384-85. The Court also observed testimony at the 402-hearing that the procedures used during Petitioner's interrogation were those generally used in the interrogation of juveniles. (*See* Doc. No. 155 at 169-73, 188.)

Petitioner's recapitulation of such matters and authorities on reconsideration (*see* Doc. No. 157 at 12-17 citing *J.D.B. v. North Carolina*, 564 U.S. 261, 277 (2011) (juvenile's age informs analysis of *Miranda* in-custody issue), is unavailing on reconsideration, as is his surmise that the generality of the trial testimony relating to the circumstances of his interrogation weighs in favor of police coercion (*id.* at 15). His reference in Rule 59(e) briefing to secondary source social science research regarding juvenile interrogation, neither newly discovered nor in the state record (*see* Doc. No. 162 at 8-15 citing *Dassey v. Dittman*, Sc. Ct. No. 17-1172, petition for writ of certiorari denied June 25, 2018) is not a basis for finding otherwise.

At bottom, Petitioner does not argue newly discovered evidence or intervening change in controlling law. Nor has he demonstrated the Court committed clear error of law or fact, or manifest injustice. *See Woods v. Sinclair*, 764 F.3d 1109, 1132 (9th Cir. 2014) (habeas relief may be granted only if the California Supreme Court's application of *Strickland* was "objectively unreasonable.").

### ii.    Prejudice

Petitioner argues the Court erred by concluding that the California Supreme Court was

reasonable in finding counsel's allegedly deficient defensing of the 1975 confession was

harmless. (Doc. No. 157 at 12-17.) He argues that absent counsel's allegedly deficient conduct,

highly aggravating evidence of Rogers's burning death would not have been presented and that

evidence Petitioner was falsely convicted in Rogers's death could have been presented in

mitigation. (*Id.*; *see also* Doc. No. 162 at 16.)

However, Petitioner's re-argument and re-litigation of matters considered by the Court in

denying the claim does not demonstrate a basis for reconsideration. The Court concluded the

California Supreme Court acted reasonably in finding "no reasonable probability of a differen[t]

sentencing outcome upon balancing the totality of mitigating evidence against the aggravating

evidence." (Doc. No. 155 at 197.) The Court observed that:

> The jury considered testimony that Petitioner fled the fire and did not seek help
> for Rogers, reasonably suggesting a consciousness of guilt in Rogers's death.
> Again, even if not admissible for its truth, Dr. Adams in opining on Petitioner's
> mental history considered Petitioner's statement that he murdered Rogers and that
> Rogers "deserved it." [Citation]
>
> Additionally, for the reasons discussed *ante* and *post*, the California Supreme
> Court reasonably could have found true the noted aggravating circumstances of
> Simms's homicide and the special circumstance [Citation], Petitioner's criminal
> history, and his other violent criminal acts [Citation]; *Lewis*, 26 Cal. 4th at 350-
> 51), as not suggestive of a reasonable probability of a different outcome absent
> the alleged deficiencies.
>
> "It is not enough 'to show that the errors had some conceivable effect on the
> outcome of the proceeding.'" *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466
> U.S. at 693). "Counsel's errors must be 'so serious as to deprive the defendant of
> a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at
> 687). That is, only when "the likelihood of a different result [is] substantial, not
> just conceivable," has the petitioner met *Strickland's* demand that defense errors
> were "so serious as to deprive [him] of a fair trial." *Id.* at 104 (quoting *Strickland*,
> 466 U.S. at 687).

(Doc. No. 155 at 197.)

Petitioner does not argue newly discovered evidence or intervening change in controlling

law. Nor has he demonstrated that the Court committed clear error of law or fact, or manifest

injustice. *See Woods*, 764 F.3d at 1132 (habeas relief may be granted only if the California

Supreme Court's application of *Strickland* was "objectively unreasonable."). Instead, Petitioner

reiterates the same arguments and re-litigates the same issues the Court already considered in denying the claim.

Moreover, Petitioner's argument that counsel was deficient by failing to present mitigating evidence arising from his alleged false conviction in Rogers's death is not framed by claim 17 and is not a basis for reconsideration.

Additionally, Petitioner's discussion of "gruesome and shocking" cases where counsel's failure to present mitigating evidence was found to be prejudicial is untethered from any Rule 59(e) analysis and the facts and circumstances of this claim for ineffective assistance of counsel relating to evidence in aggravation. Nothing therein provides a basis for reconsideration.

### iii.    Request for Discovery and Evidentiary Hearing

Petitioner argues the Court erred in denying his motions for evidentiary hearing and discovery. (Doc. No. 157 at 17.) He requests that "discovery and an evidentiary hearing [be] granted to the extent necessary[.]" (*Id.*)

However, the Court denied Petitioner's motions for discovery and evidentiary hearing finding such unnecessary because 28 U.S.C. § 2254(d) was a bar to relief based upon the record that was before the state court. (Doc. No. 155 at 320-22, 329, citing *Pinholster*, 563 U.S. at 203 n.20.)

It remains that claim 17 fails to pass through the 28 U.S.C. § 2254(d) gateway for the reasons stated in the Order, summarized above. (*See* Doc. No. 155 at 163-98, 318-22, 324-27.)

Accordingly, Petitioner's re-argument and re-litigation of matters considered by the Court in denying the claim provide no basis for reconsideration of denial of his motions for discovery and evidentiary hearing.

### iv.    Conclusions

Petitioner's re-argument and re-litigation of his claim 17 allegations that counsel was ineffective by failing to establish that his juvenile confession to the burning death of Rogers was invalid, and his related motions for discovery and an evidentiary hearing, are not a proper basis for Rule 59(e) relief, for the reasons stated. *See Clarke,* 2012 WL 6691914 at *1; *Arteaga,* 733

F. Supp. 2d at 1236.

### 3. Claim 18

Petitioner asks the Court to reconsider its denial of his claim 18 which alleges counsel was ineffective by failing to demonstrate Petitioner's actual innocence in the burning death of Rogers. (Doc. No. 157 at 17-20; *see also* Doc. No. 58-1 at 120-26.) He also asks the Court to reconsider its denial of his claim 18 motion seeking an evidentiary hearing. (Doc. No. 157 at 20.)

#### a. Clearly Established Law

The clearly established law of ineffective assistance of counsel is summarized in section III, B, 2, a, *ante*.

#### b. Analysis

##### i. Deficient Performance

###### (1) Extra-Record Opinions of Mr. Lentini

Petitioner argues the Court erred by failing to consider the above noted 2013 repudiating expert opinions of Mr. Lentini included with Petitioner's previously denied motion for evidentiary hearing. (*See* Doc. No. 157 at 17-20; Doc. No. 137-1 at 1-13; *see also* Doc. No. 155 at 318-22.) He argues the Court erred by relying upon the "junk science" in the record which Mr. Lentini has debunked. (Doc. No. 162 at 9-10.) He argues on the same basis that the Court's rejection of the claim is manifestly unjust. (*See e.g.*, Doc. No. 162 at 13.)

However, the Court is without jurisdiction to consider the claim of false evidence at trial based upon Mr. Lentini's opinions allegedly repudiating the trial experts who found the fire that killed Rogers was arson, for the reasons stated. (*See* section III, A, *ante*.)

###### (2) Extra-Record Eyewitness Statements of Ms. McMahon and Ms. Walls

Petitioner argues the Court erred by failing to consider the 2013 declarations of eyewitnesses Geraldine McMahon (Oatis) and Juanita Walls (Jackson), also included with Petitioner's previously denied motion for evidentiary hearing. (*See* Doc. No. 157 at 18-19; Doc. No. 162 at 13-14; Doc. No. 137-1 at 14-18.)

However, these declarations are not part of the state record, were not considered by the Court, and are not a basis for reconsideration. (*See* Doc. No. 155 at 318-22.)

Even if this evidence offered in support of claim 18 as previously denied were not barred by *Pinholster*, Petitioner fails to show the evidence contained in these 2013 declarations was diligently discovered after the Court's Order denying the amended petition. *See* Fed. R. Civ. P. 59(e); *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001) (facts supporting a Rule 59(e) motion are not "newly discovered evidence" unless they were previously unavailable); *Ybarra v. McDaniel*, 656 F.3d 984, 998 (9th Cir. 2011) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)) (finding evidence not newly discovered for purposes of a Rule 59(e) motion where it was available prior to district court's ruling).

In any event, the extent to which these declarations discount the aggravating evidence of Petitioner's involvement in Rogers's killing is minimal at best. As to Ms. McMahon, the statement in her 2013 declaration that she saw "[Petitioner, Green and Randolph] running toward [Petitioner's] house coming from the direction of the store" (*see* Doc. No. 137-1 at 15) is uncertain as to when (in the chronology of events surrounding the fire that killed Rogers) she made this observation, and thus not necessarily impeaching of testimony by trial witness Deborah Johnson, noted by the Court in its Order, that she saw "Petitioner and his friends Randolph and Green running away from the fire, not toward it." (Doc. No. 155 at 193.)

The Court notes in this regard the 1999 habeas testimony of Petitioner's sister, Rosie Wright, that Petitioner, Green and Randolph appeared at the scene of the fire, but not before some fifteen to twenty minutes had elapsed following her arrival. (1SHCP Ex. 3 at ¶ 18.) The 1999 habeas testimony of Petitioner's mother, Minnie Lewis, similarly states that "a couple of minutes" passed following her arrival at the scene of the fire before she saw the three boys running toward her. (1SHCP Ex. 2 at ¶ 32.)

As to Ms. Walls, the statement in her 2013 declaration that she saw "[Rogers's] car on fire … [and Rogers] crawl out of the car and he was on fire and there was no one else around … [and that she] went outside and still did not see anyone near the car, and [she] definitely did not

see [Petitioner, Green or Randolph] anywhere in the area" (Doc. No. 137-1 at 17), is similarly uncertain as to when (in the chronology of events surrounding the fire that killed Rogers) she made this observation and is not necessarily impeaching of the noted testimony of Deborah Johnson. Here again, the Court observes the witness testimony of Rosie Wright and Minnie Lewis that Petitioner, Green and Randolph did appear at the scene of the fire, but only after some number of minutes had elapsed.

Moreover, Ms. Walls's statement that no one was near the burning car is consistent with and cumulative of trial testimony by school bus driver Susie Johnson that she happened upon the burning car and subsequently pulled Rogers from it and that no one else was in the area. (*See* Doc. No. 155 at 191.) Ms. Walls statement that Rogers extricated himself from the car is otherwise unsupported and runs contrary to the noted trial testimony of Susie Johnson as well as the 1999 habeas testimony of Petitioner's mother, Minnie Lewis. (1SHCP Ex. 2 at ¶ 31.)

### (3)   Record Evidence Previously Considered by the Court

Petitioner argues the Court erred in concluding the California Supreme Court reasonably found counsel was not deficient by failing to defend the 1975 homicide charge with evidence that Rogers died accidentally. (*See* Doc. No. 157 at 18; Doc. No. 162 at 15.)

However, he points to evidence in the record that was considered by the Court when it found that "the California Supreme Court reasonably rejected Petitioner's allegations that counsel was deficient by failing to investigate, develop, and present evidence that Rogers's death was an accident rather than a homicide." (Doc. No. 155 at 193; *see also id.* at 163-69, 189-93.)

Petitioner does not set forth any basis that warrants reconsideration. Rather, he reiterates the same arguments and re-litigates the same issues the Court already considered in denying the claim. *See Woods*, 764 F.3d at 1132 (habeas relief may be granted only if the California Supreme Court's application of *Strickland* was "objectively unreasonable.").

### ii.   **Prejudice**

Petitioner argues the Court erred by concluding that the California Supreme Court was reasonable in finding counsel's allegedly deficient defensing of the burning death of Rogers was

harmless.  (*See* Doc. No. 157 at 20; Doc. No. 162 at 15-16.)  As above, he argues counsel's allegedly deficient conduct allowed the jury to consider highly aggravating evidence of Petitioner's participation in Rogers's burning death, and that evidence Petitioner was falsely convicted in Rogers's death could have been presented in mitigation.  (*Id.*)

However, Petitioner's re-argument and re-litigation of such matters considered by the Court in denying the claim do not demonstrate a basis for reconsideration.  The Court found "assuming arguendo that counsel was deficient as alleged, the California Supreme Court still could have found no reasonable probability of a different sentencing outcome upon balancing the totality of mitigating evidence against the aggravating evidence." (Doc. No. 155 at 197.)

The Court found that the California Supreme Court "reasonably could have found true the noted aggravating circumstances of Simms's homicide and the special circumstance [Citation], Petitioner's criminal history, and his other violent criminal acts [Citation], as not suggestive of a reasonable probability of a different outcome absent the alleged deficiencies.  (*Id.* at 197, 301.)

The Court lacks jurisdiction over the newly proffered false evidence claim and supporting opinions of Mr. Lentini, for the reasons stated.  The extra-record eyewitness statements of Ms. McMahon and Ms. Walls are not part of the state record.  These statements were not considered by the Court.  These statements have not been shown to be diligently discovered new evidence supporting claim 18 as previously denied.  These statements have only minimal evidentiary value.

As to the record evidence, Petitioner fails to demonstrate a basis for reconsideration of matters which the Court previously considered in denying claim 18, for the reasons stated.

Petitioner does not set forth any basis that warrants reconsideration of matters that the Court previously considered in denying the claim.  He does not argue newly discovered evidence or intervening change in controlling law.  Nor has he demonstrated that the Court committed clear error of law or fact, or manifest injustice.

Petitioner's argument that courts have found the failure to present mitigating evidence to

be prejudicial even in highly aggravated crimes (*see* Doc. No. 162 at 15-16) is untethered from any Rule 59(e) analysis and does not demonstrate a basis for reconsideration on the facts and circumstances of this case, for the reasons stated.

### iii. Request for Evidentiary Hearing and Stay

Petitioner argues the Court erred by denying his motion for evidentiary hearing. (*See* Doc. No. 157 at 20; Doc. No. 162 at 10.) He requests the Court "grant the evidentiary hearing and ultimately determine that counsel was ineffective for failure to develop significant and readily available evidence that the fire was accidental and admission of the same as a murder was prejudicial [and] vacate the Judgment and stay federal proceedings until the state court determines whether to hear and grant Mr. Lewis' state habeas relief authorized by California Penal Code §1473." (Doc. No. 157 at 20.)

However, the Court denied Petitioner's motion for evidentiary hearing (*see* Doc. No. 155 at 329) because Claim 18 failed to pass through the 28 U.S.C. § 2254(d) gateway based upon the record that was before the state court. (*See id.* at 163-98, 318-22 citing *Pinholster*, 563 U.S. at 203 n.20.)

It remains that claim 18 fails to pass through the 28 U.S.C. § 2254(d) gateway for the reasons stated in the Order, summarized above. (*See* Doc. No. 155 at 163-98, 318-22.) Petitioner's re-argument and re-litigation of matters considered by the Court in denying the claim provide no basis for reconsideration of denial of his motion for evidentiary hearing regarding claim 18.

Additionally, Petitioner may not raise for the first time in his Rule 59(e) Motion a request to stay these proceedings pending state court ruling on his pending Penal Code section 1473 habeas petition. (*See* Doc. No. 157 at 17-20; *see also Teamsters Local 617 Pension & Welfare Funds,* 282 F.R.D. at 220-21, 231; Local Rule 230(j). Even if he could do so, Petitioner fails to demonstrate that such provisional relief is appropriate in this case. The Court lacks jurisdiction over claimed false evidence at trial in the form of allegedly repudiated expert opinion that the fire which killed Rogers was arson, for the reasons stated. Moreover, these false evidence

allegations which are pending state exhaustion were not before the Court in this proceeding. (*See* Doc. No. 162 at 10-11; *cf. Gonzalez v. Wong*, 667 F.3d 965, 979-80 (9th Cir. 2011) (remanding and staying federal habeas proceeding for state exhaustion of new evidence supporting a previously denied *Brady* claim, consistent with *Rhines v. Weber*, 544 U.S. 269, 278 (2005)).

### iv. Conclusions

Petitioner's request for reconsideration of claim 18 and for evidentiary hearing and a stay based upon the noted extra-record false evidence at trial not considered by the Court fails on jurisdictional grounds, under *Pinholster*, and pursuant to Rule 59(e). Moreover, Petitioner has not demonstrated that the extra-record 2013 declarations of McMahon and Walls are "newly discovered" under Rule 59(e), or that these declarations have more than minimal evidentiary value.

Petitioner's re-argument and re-litigation of his claim 18 allegations that counsel was ineffective by failing to demonstrate Petitioner's actual innocence in the burning death of Rogers and related motion for evidentiary hearing based upon the record evidence do not demonstrate a basis for Rule 59(e) relief, for the reasons stated. *See Clarke*, 2012 WL 6691914 at *1; *Arteaga*, 733 F. Supp. 2d at 1236.

### IV. ORDER

Accordingly, Petitioner's Rule 59(e) Motion (Doc. No. 157) seeking: (i) reconsideration of the Court's August 20, 2018 Judgment upon Order denying claim 12 and issuance of certificate of appealability thereon, denying claim 17 and discovery and evidentiary hearing thereon, and denying claim 18 and evidentiary hearing thereon, and (ii) vacating of the Judgment and staying of further proceedings, is DENIED except that the part of the Rule 59(e) Motion alleging false evidence claimed in Petitioner's pending Penal Code section 1473, *In re Lewis*, Cal. Sup. Ct. No. S225564, is dismissed without prejudice.

IT IS SO ORDERED.

Dated: __December 12, 2018__        _____/s/ Lawrence J. O'Neill_____
                                    UNITED STATES CHIEF DISTRICT JUDGE